## BIRD v. CLOVER LEAF-HARRIS DAIRY.

No. 6333. Decided May 8, 1942. (125 P. 2d 797.)

See 38 Am. Jur., 761; 45 C. J., Negligence, sec. 203.

*Thatcher & Young,* of Ogden, for appellant.

*Robert S. Spooner,* of Los Angeles, for respondent.

PRATT, Justice.

Leo A. Bird, upon a complaint alleging negligence, recovered judgment against the Clover Leaf-Harris Dairy for injuries to his automobile, the result of the collapse of a canopy and part of the wall of a building in the Dairy's creamery plant. He relied upon the doctrine of res ipsa loquitur, based upon the collapse of the canopy and wall without apparent cause, and upon the fact that his son, who parked the car where it was injured, was an invitee of the Dairy. The Dairy has appealed.

A question involved is this: Did the parking of the automobile under the canopy change the status of the one who parked it there from that of an invitee to that of a licensee, so far as injuries to the automobile as a result of being in that particular position are concerned? If a licensee, plaintiff is not entitled to recover in this case.

The automobile was parked there by Mr. Bird's son, Montell. The latter tested milk for the Federated Milk Pro-

ducers on the Dairy premises. There is no question about his being an invitee so far as his duties were concerned. However the use of the automobile was not necessary to those duties. Its use was a matter of convenience to himself in going to and from work. Sometimes he used a bicycle.

The dairy furnished ample parking space for workers and visitors to the plant. Montell did not park in this space, although he knew of it. The reason he gave for parking where he did is that he saw other cars parked there and did not know that it was not to be used as a parking place. The canopy was in two parts: an east and a west. The west part covered entrances to a garage or barn where the company delivery trucks were stored when not in use. The east part covered the side of the garage used for repair purposes. There were no entrances here. Under this part of the canopy the company parked its trucks when they were in need of repair. It does not appear that Montell Bird knew of this fact, although he had worked there more than a year. It was against company orders to park cars other than delivery trucks under the canopy any place; but the employees disobeyed this order and parked under the east wing of the canopy. It does not appear that Montell Bird knew of these company orders.

On the day of the accident some of the employees had parked their automobiles, contrary to orders, under the east wing of the canopy. Their machines, too, were injured when the canopy and wall fell. Montell had parked his father's automobile under the west wing directly in front of sliding doors closing an entrance to one of the storage places for delivery trucks. According to his testimony he did so because he assumed from seeing other cars parked under the canopy that such space could be so used. He knew, however, that trucks would have to be stored there later in the day, but he expected to be away before they came.

We believe his assumption was unwarranted. Even though the parking of automobiles under the east canopy where there were no doors, might have mislead the un-

initiated into believing that such space was intended for general parking purposes, it is rather a stretch of reasoning to believe that the space in front of the garage doors was intended for parking purposes. That is not common sense. The very fact that there were doors here was a warning that it was not a parking place. The fact that the other cars were parked under the canopy at places where there were no doors would impress the average person with the thought that the garage entrances should be left clear.

We believe plaintiff's case is founded upon a fallacy. An invitee must use the owner's premises in the usual, ordinary, and customary way. 20 R. C. L. 68, § 59. It cannot be said that to shut off the owner's use of its garage is the usual, ordinary, and customary way contemplated for the public. When Montell Bird so parked, he became, so far as parking the car was concerned, at best a mere licensee, and took that part of the premises as he found them.

"* * * It may be laid down as a general rule that the liability of the owner of the premises extends no further than the invitation." 14 L. R. A., N. S., 1119, and cases therein cited. See, also, 17 Ann. Cas. 591.

As to the duty to a licensee see 20 R. C. L. 57, § 53.

This disposes of the case. We shall not discuss the doctrine of res ipsa loquitur. The judgment of the lower court is vacated and set aside, and the case remanded with directions to the lower court to enter a judgment of no cause of action.

Costs to appellant.

MOFFAT, C. J., and LARSON, J., concur.

WOLFE, Justice (dissenting).

Two issues are presented for our determination:

(1) Was the legal duty of the defendant to plaintiff's car one of an owner to an invitee or of an owner to a

licensee; and (2) whichever the duty, was there evidence to go to the jury that it had not been fulfilled?

Plaintiff's automobile was parked on the premises of defendant by Montell Bird, plaintiff's son, who came regularly to defendant's business to take tests of milk. The car was parked parallel to one of defendant's buildings used as a garage, in front of one of the several garage doors. Attached to the wall of the building and extending out over the area occupied by plaintiff's car was a heavy canopy which, on the occasion in question, shortly after plaintiff's car was parked underneath, collapsed, injuring plaintiff's car as well as several other vehicles parked in the same location but past the garage door.

That Montell Bird went to defendant's place of business as an invitee is not denied. Nor is it denied that he frequently rode to work on a bicycle which he placed just inside the garage where the canopy collapsed. Almost daily he and many other persons passed alongside of said wall and beneath the canopy. Furthermore, there was evidence before the court that Montell Bird had previously parked the cars in which he rode to work alongside of that wall and that other cars belonging to employees were parked in the same place. This was countered by testimony for the defense that bulletins had been issued against parking in that place, though it was admitted that such space was sometimes used by company employees in disregard of such rules. However, it does not appear from the evidence that Bird had been instructed not to park his car there, nor that signs had been placed where he could see them, nor that he had any knowledge of the bulletin. Although Bird had parked in front of a garage door, the evidence showed that it was at a time when the cars using the garage were out on deliveries and that his car would be removed before any returned.

The principle which governs this case is as follows: Where custom, necessity or other circumstances are such that an invitee may reasonably presume that the invitation held out

to him to come on the premises includes one's vehicle which he might ordinarily be expected to use in reaching the premises, he may place the vehicle on such portion of the premises during the period of his inviteeship as is not specifically or by apparent circumstances excluded from the scope of the invitation.

The duty of the property owner toward a traveler on his property depends on the legal status of that traveler in respect to the property. The traveler may bear toward the owner any relationship from pure trespasser to an admitted invitee. The gradations run from trespasser through tolerated trespasser, mere licensee, encouraged licensee to invitee. Factual situations on the border lines between these classifications make possible the guiding of the relationship in these border-line cases into one classification or the other depending largely on what is thought to be demanded by the dictates of justice. The owner owes no duty to a trespasser except that of refraining from committing active negligence when he is aware of the trespasser's presence. The keeping of a spring gun or trap is classed as active negligence because it is as if the owner himself had operated such apparatus against the trespasser. They were set up for that purpose. The owner owes no duty to keep his property safe for trespassers or mere licensees. But if the owner has encouraged persons to come on the premises by enticement, allurements or inducements he has a duty beyond that of refraining from mere active negligence. Such is the case of children allured by an attractive "nuisance." And in the case of invitees—persons coming on the property for the mutual benefit of the person and the owner—the latter has the duty to exercise reasonable care in keeping his property safe, as distinguished from the case where a person comes on the property for purposes not in any way having to do with the owner— i. e. trespassers and mere licensees. An examination of many cases will reveal that when the property owner has maintained on his property a condition inherently or pat-

ently dangerous and the traveler on the property is there not wholly without reason or excuse, the courts have attempted if possible to guide the factual situation into the classification which imposes on the owner the duty toward the traveler which will require an abatement as to him of such patently or inherently dangerous condition. Thus there was a judicial manipulation of these two variables of relationship of the traveler and the type of negligence of the owner or perhaps more accurately stated, the factual situations were guided wherever possible into the conceptual framework which would exact of the owner the duty which under all the facts of the case seemed to fulfill the requirements of justice. And the courts have not indulged in great squeamishness in keeping the matter of the owner's liability from the jury by differentiating in borderline cases between an invitee and a licensee in order that the negligent owner might reap the benefit of a happy chance that his neglect injured a licensee rather than an invitee. Unless the presence of the victim itself is negligence the negligence has been purely that of the owner. And when, for example, the unfortunate victim arises amid the rubble of a dilapidated wall which fell due to the neglect of its owner, the courts have not indulged in fine distinctions to exculpate from responsibility the owner who maintains such a condition. *Barry* v. *New York Central & H. R. R. Co.*, 1883, 92 N. Y. 289, 44 Am. Rep. 377; *Sweeny* v. *Old Colony & Newport R. Co.*, 1865, 10 Allen, Mass., 368, 87 Am. Dec. 644; *Herrick* v. *Wixom*, 1899, 121 Mich. 384, 80 N. W. 117, 81 N. W. 333; *Fitzpatrick* v. *Cumberland Glass Mfg. Co.* 1898, 61 N. J. L. 378, 39 A. 675; *Union Stock Yards & Transit Co.* v. *Rourke*, 10 Ill. App. 474; *Palmer* v. *Gordon*, 173 Mass. 410, 53 N. E. 909, 73 Am. St. Rep. 302.

Returning to the principle which governs this case the matter ultimately resolves itself into a determination as to whether the place where the plaintiff put his car was specifically or by apparent circumstances excluded from the implied invitation. There is no evidence that the plaintiff

had notice of any specific exclusion. The entry way to a garage might ordinarily be considered a place excluded from the scope of the invitation. It would ordinarily be an "apparent circumstance." But the evidence that others had used that portion of the premises in the same way without apparent objection was evidence that the place which might be ordinarily considered objectionable for parking was not so.

Certainly during the period of his going to work at defendant's plant, Bird had cause to believe that he was not barred from passing alongside the wall in question, and that it was a reasonably safe place. Had the injury been to Bird personally, there could be no doubt of liability, as his status was definitely that of invitee. The fact that it was his car that was injured, when it was occupying premises which Bird and many others had used in the same way, does not place the car in a different status from Bird. There was not such a deviation of his duty to exercise reasonable care. The canopy which fell extended past the place in the wall where the door was located. It would seem to be indulging in niceties of distinction not comporting with the actualities of human conduct to hold that cars stationed along the wall past the door and injured by that part of the canopy were in the position of invitee cars but plaintiff's a few feet along injured by the same canopy was a licensee car. We conclude therefore that defendant was under a duty to use "that degree of care and watchfulness to protect against injury that is commensurate with the probability of persons making the accustomed use of such premises." *Chicago, R. I. & P. R. Co.* v. *McCleary*, 175 Okl. 347, 53 P. 2d 555, 557.

Having found the legal duty of the defendant toward the car in this case to be one of an owner toward an invitee, we must determine whether the trial court could have found that there was negligence on the part of defendant by reason of which the damages to the car may be assessed against it. The wall was exclusively and completely within the

control of the defendant. The injury was one which would not occur in the ordinary course of things, if the one having control used the proper care. The case is one, therefore, in which the doctrine of res ipsa loquitur would apply, thus making out a prima facie case for the plaintiff. The burden of going forward with the evidence then shifted to defendant to show that it was not guilty of negligence. *White* v. *Pinney,* 99 Utah 484, 108 P. 2d 249; *Loos* v. *Mountain Fuel Supply Co.,* 99 Utah 446, 108 P. 2d 254. To this end evidence was introduced by defendant showing an inspection of the premises about three weeks before the wall collapsed, and that accumulations of snow were shoveled from the canopy. The trial court was at liberty to consider the adequacy of the inspections and the competence of those who made them. In weighing the evidence, the court could properly consider the fact that there was no evidence to show any effort to determine how much weight the canopy could stand, and that since it was admitted that there was some snow and ice on the canopy at the time of the collapse, sufficient care had not been exercised to remove such weight before it became excessive. It is clear that the trial court did not consider the precautions taken by defendant adequate to constitute reasonable care in the light of the age of the building, the manner of construction of the canopy, the frequency of snowfalls just prior to the accident and the fact of the collapse of the wall.

In *Goldstein* v. *Levy,* 74 Misc. 463, 132 N. Y. S. 373, 374, the court said:

"Evidence tending to show that inspections were carefully and regularly made is insufficient to establish that the accident itself was not caused by the defendant's negligence. The circumstances and character of the occurrence were such as to call for the application of the doctrine of res ipsa loquitur. The accident was unusual. The plaintiff could not be expected to define its exact cause. If the inspections which the defendant claimed were made had been carefully made, it is not inconceivable that the defect which caused the shade to fall might have been discovered. If one may be held liable for the fall of a wall upon a pedestrian (*Mullen* v. *St. John,* 57 N. Y. 567, 15

Am. Rep. 530), or an inn-keeper for the fall of plaster from a ceiling upon a guest (*Morris* v. *Zimmerman*, 138 App. Div. 114, 122 N. Y. S. 900), we can see no good reason why the same principle which was applied in those cases should not be held applicable here."

See, also, *J. C. Penney Co.* v. *Forrest*, 183 Okl. 106, 80 P. 2d 640; *Angerman* v. *Edkemon*, 76 Utah 394, 290 P. 169, 79 A. L. R. 40; *Brumhall* v. *Sutherland*, 110 Cal. App. 10, 293 P. 672.

We cannot say, in view of the fact that the doctrine of res ipsa loquitur applies here, that there was no substantial evidence to support the trial court in its finding that the damages suffered by plaintiff's automobile were a direct and proximate result of. the careless and negligent maintenance of an unsafe, unsound and dangerous wall.

The evidence of the plaintiff under the rule of res ipsa loquitur and that submitted by the defendant properly went to the jury under the rules laid down in the case of *White* v. *Pinney*, supra, *Loos* v. *Mountain Fuel Supply Co.*, supra, *Romney* v. *Covey Garage*, 100 Utah 167, 111 P. 2d 545.

For the reasons given herein, I dissent. The judgment of the trial court should be affirmed.

McDONOUGH, Justice: I dissent.