## MARTIN v. JONES.

No. 7766.   Decided February 2, 1953.   (253 P. 2d 359.)

598

See 65 C. J. S., Negligence, sec. 287. Duty and liability of proprietor respecting condition of store. 38 Am. Jur., Negligence, sec. 131; 162 A. L. R. 949.

*McCullough, Boyce & McCullough,* Salt Lake City, for appellant.

*Stewart, Cannon & Hanson* and *Ernest F. Baldwin, Jr.,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

This action was commenced by the appellant, plaintiff below to recover damages for personal injuries sustained by him when he fell down a dumb-waiter shaft in the respondent's drug store. In the court below a jury returned

a verdict of "no cause of action" against the appellant and from judgment entered on that verdict he brings this appeal contending that the court did not correctly instruct the jury as to the duty owed him by the respondent.

On the night of November 11, 1950, the appellant entered the respondent's drug store to make some purchases. Except for the soda fountain, prescriptions, cosmetics and bottled liquor, customers are allowed to pick up and handle merchandise in the store without the assistance of clerks although the respondent attempted whenever possible to have clerks wait on customers as soon as they entered the store. The appellant testified that upon entering the store he asked a woman clerk for some tablets and razor blades which she obtained for him and for which he paid her. He then asked for an automatic pencil and was told by the clerk that they were on a display card on a shelf behind the liquor counter which was in another part of the store. Appellant then said, "I will get one", and with the clerk following him he proceeded to the rear of the counter where bottled liquor was sold. He testified that he did not observe any signs barring his admittance or that anything was said to him by the clerk about not going behind the counter. Appellant noticed nothing unusual about the floor behind the counter although he testified that the floor was "shadowy." As he reached up on tip-toe to remove the display card from the shelf which was about seven feet above the floor, he took a step sideways onto what appeared to be the floor and suddenly fell down a dumb-waiter shaft into the basement about eight to ten feet below.

In conflict with the testimony of the appellant that a woman clerk followed him to the rear of the counter; Mrs. Raedell Ashley and Mrs. Aletha Cannon, clerks working in the store on the night of the accident, testified on behalf of the respondent that after the appellant had completed his purchase of tablets and razor blades, he said nothing about wanting to buy a pencil and that they both went about serving other customers, thinking he intended to

leave the store. Mrs. Cannon testified that when she next observed the appellant he was standing behind the liquor counter with the display card of pencils in his hand; that she walked over to him and asked if she could serve him, to which he replied that he wanted a pencil; that after he removed a pencil from the card, he turned to replace the card on the shelf and in so doing fell down the shaft. She testified that she did not tell him that customers were not allowed behind the liquor counter but attempted to help him and get him out from behind the counter as soon as possible without hurting his feelings; that the lighting in the store made the open shaft visible and, thinking he could see it, she did not deem it necessary to warn him of his proximity to it. Respondent produced evidence that at the entrance to the rear of the counter was posted a sign reading "No Admittance, Employees Only."

Around the shaft on the floor was a moulding about four inches wide and one inch high. The shaft had been constructed to accommodate a dumb-waiter but the use of the elevator had been discontinued. The shaft was used, however, in the evenings when the liquor department was closed as an opening through which employees pushed boxes of liquor from the basement to replenish the stock on the shelves. Except when the shelves were being stocked, the dumb waiter was usually pulled up until the platform of the dumb-waiter was almost flush with the floor and was secured in that position. The platform could then be walked on as part of the floor by clerks walking behind the counter.

Appellant had been in the store several times prior to the accident and admitted that on those occasions he had not seen customers behind the liquor counter. He further admitted that on one occasion he had walked behind the prescription counter and was told to leave by the respondent.

The trial court in its Instruction No. 9 to the jury charged them that: ■■

"If you find that the aisle behind the liquor counter was not intended for and was not a place used by customers and patrons of defendant [respondent] and was intended and used only as a working area for use by defendant's employees, and that plainly visible signs were posted signifying the area was not for customers, and if you further find that plaintiff [appellant] *walked behind said counter to the vicinity of said opening, without the direction or consent of the defendant or his employees, then you are instructed that in walking behind said counter, plaintiff was a trespasser and took the premises as he found them, and defendant owed him no duty whatever with respect to the existence of the opening, except to not wilfully or knowingly injure him,* and he is not entitled to recover, and your verdict must be in favor of the defendant, and against the plaintiff, No Cause of Action." (Italics mine.)

The italicized portion of the instruction does not correctly state the duty which a land owner owes to a trespasser whom he knows to be upon his premises. By the respondent's own evidence, the appellant did not walk behind the liquor counter and fall down the dumb-waiter shaft without first being seen and discovered by one of the respondent's employees. One of the clerks noticed the appellant behind the liquor counter before his fall, and in fact went over to serve him. By her own testimony, she (the clerk) was standing at the side of the appellant for "a few minutes" before he fell down the shaft. Such being the undisputed facts, the duty owed to the appellant by the respondent was erroneously stated in Instruction No. 9. Such duty is correctly set forth in Sec. 337 of the Restatement of the Law of Torts, to wit:

"A possessor of land who maintains thereon an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact therewith, is subject to liability for bodily harm .caused to trespassers by his failure to exercise reasonable care to warn them thereof if

"(a) the possessor knows or, from facts within his knowledge, should know of their presence in dangerous proximity to the artificial condition, and

"(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved therein."

It is clear that the shaft was an artificial condition which involved a risk of death or serious bodily harm to persons coming in contact therewith; also, that the respondent's servant knew of the appellant's presence in dangerous proximity to the shaft. As to the requirement that the artificial condition must be of such a nature that the possessor of land has reason to believe that the trespasser will not discover it, a jury question was presented in the instant case. Under all the circumstances a jury could find that the respondent's clerk, Mrs. Cannon, who stood beside the appellant behind the liquor counter in close proximity to the hole, had reason to believe that he would not discover the shaft. Undoubtedly she had reason to know that appellant had not been behind the liquor counter before as customers were not allowed there. She knew he was reaching for a high shelf and that his attention was directed upon the display card and the shelf and not upon the floor. A jury could reasonably conclude she should have realized that the appellant had no reason to suspect that behind a counter where clerks walked back and forth when selling liquor there would be an open hole in the floor.

This case is quite unlike *Knox* v. *Snow*, 119 Utah 522, 229 P. 2d 874, 876, cited by the respondent, where the plaintiff fell into a grease pit in a garage and was injured. There the court in holding that he was contributorily negligent as a matter of law pointed out that

"From his previous experiences and observations of similar shops where motor vehicles are serviced, he could reasonably be charged with knowledge that some of the equipment in the shop would present hazards to one paying no attention to the obstacles across the course to be taken. Furthermore, the evidence establishes that he knew the path he was taking was not free and clear as while proceeding across

the room toward the rack he stepped over both beams of a hydraulic hoist which was in his pathway and he maneuvered his way around cans and other debris on the floor of the shop. In spite of knowing the probability of other obstacles blocking his course, plaintiff continued forward without seeing the cement border around the pit, the grease pit, or the ladder which was protruding prominently from the pit. The hydraulic hoist was located about nine feet from the pit, and the grease and oil cans were between the hoist and the pit. These obstructions compelled plaintiff to pay some heed to the floor of the shop and the path he travelled as he crossed the service room in order to avoid tripping over them."

No such facts obtain in the instant case. There were no preliminary circumstances which would reasonably draw the appellant's attention to the fact that he was in a hazardous area. A jury could find that Mrs. Cannon had reason to believe that the appellant did not have notice of and would not discover a hazard on the floor behind the counter. Assuming that she thought that he read the "No Admittance" sign as he made his way behind the counter, she could be charged with the realization that he had no reason to believe that his admittance was barred because of hazards lurking, but because the management did not want the liquor bottles tampered with, being under bond to the State for their strict account. That there should be an open hole behind a counter in a modern store where clerks walk seems certainly extraordinary, raising a jury question as to whether the respondent's employees had reason to believe that a customer who was unfamiliar with that part of the store and who had his attention focused on a display card seven feet above the floor would not see an open hole in the floor.

The judgment below is reversed and a new trial is ordered. Costs to the appellant.

McDONOUGH, HENRIOD and WADE, JJ., concur.

HENDRICKS, District Judge (dissenting).

I dissent.

The law as now declared by the main opinion of the Court overrules all former cases[1] of this Court which placed upon the individual the duty of using ordinary care and caution for his own safety and protection from hazards readily discernible while upon the property occupied by another.

Decreeing such to be the law in effect places an undue expense burden on the business occupier of property by subjecting him to defend damage suits by the malingerers and the star-gazing nosey-wanderers and/or maintaining expensive protective measures against them. All of such unnecessary expense must ultimately fall upon the members of organized society at a time when the social group is demanding that the individual assume his full responsibilities for self-protection in order that a high standard of living may be maintained.

The storekeeper should not be required to render safe for his customers' use parts of his store reserved for the use of himself and his employees.

There are some significant facts that should be kept in mind in deciding this case:

1) The appellant was a frequent visitor to this neighborhood store and has been a salesman and a man about town for 20 years, and therefore well acquainted with the liquor laws pertaining to sale of liquor;

2) He admits that once he was ordered out from behind the prescription counter, respondent says he had ordered appellant out from behind the prescription counter several times; by the exercise of common intelligence he would have

---

[1]*Mingus* v. *Olsson,* 114 Utah 505, 201 P. 2d 495; *Knox* v. *Snow,* 119 Utah 222, 229 P. 2d 874; *Compton* v. *Ogden Union R. & Depot Co.,* 120 Utah 453, 235 P. 2d 515; *Bird* v. *Clover Leaf-Harris Dairy,* 102 Utah 330, 125 P. 2d 797.

known that articles on top of a seven-foot shelf back of the liquor counter were there for display purposes only;

3) That it was a holiday, Armistice Day, and the liquor counter was closed to the public;

4) That at the entrance to back of the liquor counter was a large sign "No Admittance, Employees Only";

5) That the two-foot hole in the floor was 12 to 15 feet from where appellant entered back of the counter;

6) That the lighting expert testified that a "gadget" test proved that the store lighting system made the floor as light as day; the appellant said as he remembered it the floor was shadowy;

7) It must be assumed that a light was on in the basement because when Mrs. Cannon stepped over to the shaft she saw and described his position on the basement floor; because of the basement light the hole would have been all the more visible to appellant;

8) By observing the pictures of the shelf with articles displayed thereon together with Mrs. Cannon's testimony, the appellant was not near the hole in the floor when he replaced the display card;

9) That Mrs. Cannon had a right to assume that appellant had seen the hole and would protect himself from the hazard, she had the further right to assume that he would move in only one direction and that would be toward the entrance and move away from the hole, and that he would have no more difficulty in replacing the card than he had in getting it;

10) Another fact that must be stressed is that a man, the size of appellant could not fall through a two-foot hole by stepping into it one foot at a time. Had he stepped into it backward as he testified, one leg would have been out and the spread of his arms would have held him up; if he had stepped into the hole sideways as Mrs. Cannon pre-

sumed, because she did not see him go through the hole, she was looking in another direction, waiting to usher him out sans a bottle of liquor, one leg would have been out and he wouldn't have fallen through. To get down through the hole, he had to jump into it with both feet.

The appellant testified at the trial that he told the clerk he wanted a Fine-Line Pencil and she directed him to the card on the shelf back of the liquor counter and allowed him back there. This story was abandoned by his counsel, I think quite properly, and they based their brief on the theory that originally he was a trespasser but that he became an invitee when the clerk approached him and asked him if she could serve him. The main opinion of the Court adopts the theory of appellant's brief and endeavors to show that the clerk's approach and her courteous inquiry invoked some hocus pocus of the law which changed appellant's status ab initio from entrance upon the forbidden territory.

True, in *Knox* v. *Snow*, 119 Utah 222, 229 P. 2d 874, 876, the Court did point out, merely as a matter of adding further emphasis to that case, the fact that there were other hazards in the garage. But Justice Latimer quoted with emphasis from the rule regarding contributory negligence as stated on page 861 of 38 Am. Jurisprudence,

"a plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge or means of knowledge of the danger, and conversely, *he will be deemed to have been guilty if it is shown that he knew* or reasonably should have known of the peril *and might have avoided it by the exercise of ordinary care* * * *."

Justice Latimer made it plain that if the hazard is discernible with the exercise of reasonable care, failure to see it would be negligence; he said "A reasonable person makes some observations along the path he chooses to follow."

Certainly it cannot be said that this hole in the floor could not have been observed by the appellant had he made some observation in front of him where he was walking.

In the case of *Mingus* v. *Olsson,* 114 Utah 505, 201 P. 2d 495, this court held that deceased was guilty of contributory negligence as a matter of law which precluded recovery because he had failed to look to see if there was, a vehicle approaching and walked into the path of an oncoming auto. In the case of *Bird* v. *Clover Leaf-Harris. Dairy,* 102 Utah 330, 125 P. 2d 797, 799, this court held that the property occupier owes no duty to a trespasser nor a licensee "except that of refraining from committing active negligence". The only duty Mrs. Cannon owed the appellant was to refrain from pushing him down the hole. These cases should not be overruled by innuendo.

Chief Justice WOLFE quotes as a basis for his opinion the rule set forth in Section 337 of the Restatement of the Law of Torts, to wit:

"A possessor of land who maintains thereon an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact therewith, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them thereof if

"(a) the possessor knows or, from facts within his knowledge, should know of their presence in dangerous proximity to the artificial condition, and

"(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved therein."

It takes a great deal of the imagination to find that a dumb-waiter shaft 15 feet from the entrance to back of the counter, where only employees are allowed, readily discernible to any one who looks, any more of an artificial condition than a grease pit readily discernible to any one who looks. Nor does the fact of the case fall under (a) alone or in conjunction with (b) as should be. For certainly no person with ordinary intelligence could have failed to see the shaft had he used ordinary care for his own safety and made some observation along the path in front of him. Nor could any jury be presumed to find that after a sane man saw the hole through the floor that he would not rea-

lize the danger and risk therein, and having seen the hole and realized the danger therein would not act for his own safety.

I do not believe that it would be good law to hold that the clerk by approaching appellant and saying "May I serve you" waved some magic wand of the law that ab initio changed appellant's status from that of a trespasser or licensee to that of an invitee or relieved him of his present or antecedent duty to look ahead of him and protect himself from any hazards that were readily discernible in his pathway. Nor can it be logically argued either that Mrs. Cannon's approach coupled with her words sprayed him with any legalistic detergent that cleansed him from antecedent and present negligence, to wit: His failure to use ordinary care for his own safety by looking where he was going and protecting himself from the hazards of the hole in the floor that he could have seen had he looked.

It is unnecessary to spend any time in answering or conjecturing what the appellant's original intention or status was when he went behind the liquor counter; how or why he jumped through the hole; or in arguing whether we should, or do, overrule former cases; or declare a new refinement of the law for the future benefit of malingerers and the star-gazing nosey-wanderer. Nor need we consider for a moment whether the Court's instruction No. 9 was correct because in this case as a matter of law the appellant was negligent. He failed to use ordinary caution in observing where he was going and seeing a hazard he could have seen had he casually glanced at the floor in front of him. He had absolutely every reason to believe that it being a holiday, and therefore no clerks working behind the counter, that there, more than likely would be a hazard back there, and certainly if the floor was shadowy he should have been more alert. The appellant being negligent as a matter of law the verdict of the lower court should be affirmed with costs to respondent.

CROCKETT, J., being disqualified, did not participate.