# STATE OF MICHIGAN

# COURT OF APPEALS

GORDON JOSEPH BREDOW and SUZANNE
BREDOW,

        Plaintiff-Appellant,

v

LAND & CO., PRD CONSTRUCTION INC d/b/a
LAND SERVICE AND SUPPLY, WYOMING
INDUSTRIAL CENTER LLC, AND WYOMING
INDUSTRIAL CENTER II LLC,

        Defendants-Appellees.

FOR PUBLICATION
October 30, 2014
9:05 a.m.

No.   315219
Kent Circuit Court
LC No.   11-011291-NO

Before:  RONAYNE KRAUSE, P.J., and HOEKSTRA and WHITBECK, JJ.

HOEKSTRA, J.

In this premises liability action, plaintiff appeals by right the trial court's grant of summary disposition to defendants.  Because we conclude that plaintiff was injured while engaging in an activity on defendant's premises that was outside the scope of his invitation and that he must therefore be classified as a licensee for whom defendants owed no duty to maintain the premises or to warn him of a known hazard, we affirm.

In December 2008, Ferguson Enterprises, a wholesale distributor of plumbing supplies and other items, employed plaintiff as a project manager in its pricing center.  In this role, plaintiff explained that he worked "with data," creating spreadsheets and other tools to aid those individuals analyzing commodity and matrix pricing for the Midwest.  The pricing center where plaintiff worked was located in a rented warehouse which was part of a facility owned and managed by defendants.

On December 26, 2008, plaintiff and a co-worker, Greg Layton, acting on their own accord, undertook the task of clearing snow and ice from an area near the building's entrance.  Plaintiff, in particular, began clearing large icicles which were descending from the building's roof.  As he did so, large amounts of snow and ice fell from the roof onto plaintiff, causing him serious injury.

Plaintiff lacked specific recollection of the events surrounding his injury and indicated that Layton would be best able to describe the incident.  According to Layton's description, on the day in question, the "very thick" ice forming on the building's roof was of such a length that

-1-

it almost reached the ground. Early in the day, the ground near the entrance of the building appeared clear, but, by afternoon, ice had begun to fall from the roof. Unsolicited, Layton and plaintiff attempted to remove this ice debris from the ground, including ice chunks somewhat smaller than a bowling ball.

Plaintiff then began to attempt the removal of icicles hanging down from the building's roof. Layton explained that, just before plaintiff's injury, plaintiff was using a "snow shovel to pry one of the icicles that were hanging from the building off of the building," at which time "snow and ice from on top of the roof came down with" the icicle. It was the snow and ice from on top of the roof that struck plaintiff, knocking him down and causing his injuries.

Layton noted that, as a matter of "common sense," the risk of falling ice posed a danger as evidenced by the ice on the ground. Recognizing this danger, Layton also indicated that, while plaintiff pushed on the icicles, Layton "was kind of edging back because it seemed dangerous so [he] didn't want to be near it." In Layton's opinion, the section of the roof near where plaintiff chose to strike the icicles could have come down at any time. Likewise, though plaintiff had few memories of the specific events surrounding his injury, he had previously seen snow and ice on the building's roof, and he had heard snow and ice falling off the building's roof prior to the incident in question. He also described the process of "pushing" or "clearing" the icicles, stating: "you kind of push [the icicles] while you're looking up, so you don't I mean, you can image getting something that's dropping down and tipping over and teetering. It can be dangerous."

Sometime after sustaining his injury, plaintiff filed suit against defendants. Defendants later moved for summary disposition, which the trial court granted after determining that the snow and ice on the roof constituted an open and obvious danger without any special aspects. Plaintiff now appeals as of right.

A trial court's decision to grant a motion summary disposition is reviewed de novo. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). In this case, the trial court considered materials outside the pleadings when granting summary disposition, meaning that we review the decision as having been granted under MCR 2.116(C)(10). *Hughes v Region VII Area Agency on Aging*, 277 Mich App 268, 273; 744 NW2d 10 (2007). Summary disposition should be granted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). In determining whether a conflict in the evidence remains, the pleadings, affidavits, depositions, admissions and other evidence submitted by the parties must be viewed in a light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A material question of fact remains when, after viewing the evidence in this light, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

The present case is clearly one of premises liability, meaning that plaintiff's injury arose from an allegedly dangerous condition on the land. *Buhalis v Trinity Continuing Care Services*, 296 Mich App 685, 692; 822 NW2d 254 (2012). To state a claim of premises liability, a plaintiff must show the elements of negligence; that is, a plaintiff must demonstrate that: "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the

proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006).

In this case, we note that the parties focus their appellate arguments on the issues of proximate causation, and whether, for purposes of assessing defendants' duty, the danger in question was open and obvious, and, if so, whether the open and obvious danger had "special aspects." Before reaching the parties' arguments, under the particular circumstances of this case, we find it necessary to first decide plaintiff's status as an entrant on defendants' property in order to ascertain the duty owed by defendants.[1] See *James v Alberts*, 464 Mich 12, 20; 626 NW2d 158 (2001) (recognizing individual's status as trespasser, licensee, or invitee determines the landowner's attendant duty). Specifically, the parties apparently operate under the assumption that plaintiff was an invitee at the time of his injury, but, for the reasons explained below, we have determined that plaintiff was, at best, a licensee at the time of his injury, and, for this reason, defendants owed plaintiff a reduced standard of care which did not include an affirmative obligation to make the premises safe for plaintiff or to warn him of the evident danger posed by knocking down icicles.

In Michigan, the duty owed by a landowner with respect to the conditions of his or her land depends upon the category of person entering the land, i.e., whether the individual is a (1) trespasser, (2) licensee, or (3) invitee. *Id.* at 19. An explanation of the respective categories, and the attendant standard of care owed by a landowner, was provided in *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596-597; 614 NW2d 88 (2000), wherein the Court stated:

> A "trespasser" is a person who enters upon another's land, without the landowner's consent. The landowner owes no duty to the trespasser except to refrain from injuring him by "wilful and wanton" misconduct.
>
> A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. Typically, social guests are licensees who assume the ordinary risks associated with their visit.
>
> The final category is invitees. An "invitee" is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." The landowner has a duty of care, not only to warn the invitee of any known dangers,

---

[1] Though the parties have not framed the matter this way, "addressing a controlling legal issue despite the failure of the parties to properly frame the issue is a well understood judicial principle." *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002).

but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law. [Internal citations omitted.]

For purposes of determining a landowner's duty in a premises liability case, the entrant's status as an invitee, licensee, or trespasser on the land is considered "at the time of injury." *Burnett v Bruner*, 247 Mich App 365, 368; 636 NW2d 773 (2001). Typically, invitee status is conferred upon individuals entering the property of another for business purposes, meaning there must be some prospect of pecuniary gain prompting the landowner to extend an invitation onto the premises. *Stitt*, 462 Mich at 597, 603-604. For instance, a tenant is considered an invitee of the landlord. *Benton*, 270 Mich App at 440.

However, depending on the circumstances, an individual's status as an invitee on the property is subject to change during the visit to the premises if the individual exceeds the scope of his or her invitation. See 2 Restatement Torts, 2d, § 332, pp 181-183. An invitee may, for example, exceed the scope of an invitation where he or she departs from the location encompassed by the invitation, or when he or she stays on the property beyond the time permitted by the invitation. See *Carreras v Honeggers & Co, Inc*, 68 Mich App 716, 728; 244 NW2d 10 (1976); 2 Restatement Torts, 2d, § 332, pp 181-183. In *Constantineau v DCI Food Equip, Inc*, 195 Mich App 511, 514; 491 NW2d 262 (1992), this Court recognized that a visitor's status may change while on the property, and we offered two examples, drawn from long-established caselaw, in which an individual lost invitee status by exceeding the scope of an invitation. This Court summarized those cases as follows:

> In *Bennett v Butterfield,* 112 Mich 96; 70 NW 410 (1897), the plaintiff was injured while he was a customer in the defendant's store. The plaintiff claimed that he was invited into a place of danger without warning and without proper guards at the entrance to protect him. The evidence, however, established that the plaintiff attempted to enter an elevator without invitation or permission. Consequently, the Supreme Court held that the plaintiff alone was "responsible for the accident and the injury, and [could] not recover." *Id.* at 98. Similarly, in *Hutchinson v Cleveland-Cliffs Iron Co.,* 141 Mich 346; 104 NW 698 (1905), no duty was owed to an injured worker who had not been invited to enter that portion of the mill where the injury occurred. [*Constantineau*, 195 Mich App at 514.]

In the same way, in *Bedell v Berkey*, 76 Mich 435, 440-441; 43 NW 308 (1889), an individual who entered a factory property to conduct business and was injured when he wandered into a storm-room could not recover for the reason that "all persons who stray about other people's premises at their own will must look out for their own safety in such places." See also *Buhalis*, 296 Mich App at 697 (holding landowner not liable where the visitor to the property strayed from the safe means of ingress and egress provided). Stated more broadly, it has long been recognized that an invitee is expected to use a landowner's premises in the "usual, ordinary, and customary way," and that when an invitee fails to do so, he or she becomes, at best, a mere licensee. See *Armstrong v Medbury*, 67 Mich 250, 253-254; 34 NW 566 (1887).

In this regard, apart from geographical or temporal constraints on an invitation, an invitee might also exceed the scope of an invitation, and consequently lose invitee status, by acting in a manner inconsistent with the scope and purpose of the invitation. See 62 Am. Jur. 2d Premises Liability § 107 ("Deviation from an invitation to enter onto the possessor's land occurs when the entrant acts in a manner inconsistent with the scope of an express or implied invitation, thereby demonstrating a change in relationship between that person and the possessor."). In other words, because an invitee is expected to use a landowner's premises in the "usual, ordinary, and customary way," he or she loses invitee status by failing to act in this manner. See *Bird v Clover Leaf-Harris Dairy*, 102 Utah 330; 125 P2d 797 (1942); *St Mary's Med Ctr of Evansville, Inc v Loomis*, 783 NE2d 274, 282 (Ind Ct App, 2002). By way of illustration, caselaw from other jurisdictions is replete with instructive examples of ways in which individuals have lost invitee status by acting outside the usual, ordinary, and customary way on the landowner's property. See, e.g., *Hogate v America Golf Corp*, 97 SW3d 44, 48 (Mo Ct App, 2002) (finding the defendant had issued a general invitation to the public to use golf course to walk, drive carts, and play golf; thus, individual injured while riding a bike on a fairway exceeded the scope of his invitation); *Bird*, 102 Utah at 330 (holding an individual who failed to park his car in the usual, ordinary, and customary way contemplated for the public was a licensee); *Gavin v O'Connor*, 99 NJL 162, 163, 166; 122 A 842 (1923) (determining that a child killed while swinging on a clothes line had exceeded the scope of his invitation to play in the yard by putting the clothes line to an unintended use); *Brunengraber v Firestone Tire & Rubber Co*, 214 F Supp 420, 423 (SDNY, 1963) (concluding a customer who entered a mechanic's garage as an invitee but remained in the garage for the private purpose of cleaning out the trunk of his car was, at best, a licensee).[2] Consistent with Michigan law regarding the scope of an invitee's invitation, these cases reinforce the notion that a landowner's duty to an invitee is shaped by the invitation extended, and an individual exceeding the scope of that invitation, whether by geography, time, or activity, is not entitled to the standard of care a landowner owes an invitee.

Turning to the present facts, plaintiff clearly qualified as an invitee when he initially entered the premises for the purpose of working for Ferguson Enterprises and fulfilling his role as a project manager in the pricing center. As an invitee to the property, his invitation would include ingress and egress to the building. See 2 Restatement Torts, 2d, § 332, pp 182-183. Thus, plaintiff could, as an invitee, enter the warehouse and carryout his business function there in the form of his work for Ferguson Enterprises.

However, when plaintiff undertook the unsolicited act of clearing icicles from the building—a task unrelated to his function at Ferguson Enterprises and to his purpose for being

---

[2] See also *Sims v Giles*, 343 SC 708, 733; 541 SE2d 857 (2001) (recognizing that, in some cases, a worker on a premises may lose invitee status when the worker exceeds the scope of the work); *Barry v S Pac Co*, 64 Ariz 116, 122; 166 P2d 825 (1946) (concluding an individual lying on the roadbed was a trespasser where those walking might be licensees); *Page v Town of Newbury*, 113 Vt 336, 340; 34 A2d 218 (1943) ("[O]ne entering may become a trespasser by committing active and positive acts not included in the terms of his license or authority to enter . . . .").

on the property—plaintiff lost his status as an invitee and became, at best, a mere licensee.[3] That is, in renting out the warehouse property, defendants held it open to the use of Ferguson Enterprises and its employees engaged in conducting business for Ferguson Enterprises. In contrast, defendants employed maintenance personnel to ensure proper maintenance of the building, including tasks such as snow removal and issues related to roof repairs. There is no indication that defendants extended an invitation, either express or implied, to Ferguson Enterprises or its employees to tackle the task of removing large, potentially dangerous icicles from the building. By doing so of his own volition, plaintiff used the property in a manner that cannot be considered usual, ordinary, and customary, and he thereby exceeded the scope of his invitation, becoming, at best, a licensee.[4] Stated differently, the question in this case is not whether defendants provided reasonably safe entry into the building for invitees using the property in an ordinary way for its proper purpose; the question is whether defendants can be held liable when, of his own accord and unbeknownst to defendants, plaintiff took it upon himself to commence the apparently dangerous task of removing icicles from the building, thereby performing an act outside the scope of his business purpose for visiting the property and his invitation to be on the premises.

Given the change in plaintiff's status as an entrant to the property, to ascertain what duty defendants owed plaintiff, we consider the duty owed by a landowner to a licensee, which is, as noted, "a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved." *Stitt*, 462 Mich at 596. See also *Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 65; 680 NW2d 50 (2004) ("[T]he law in Michigan requires that a landowner owes a licensee a duty to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the hidden danger involves an unreasonable risk of harm and the licensee does not know or have reason to

---

[3] See Restatement (Second) of Torts § 332 (1965), comment b ("[A] volunteer helper who comes upon land to aid in getting a truck out of a mudhole, or in putting out a fire, without being asked to do so, is a licensee, but not an invitee.").

[4] The dissent suggests that plaintiff's attempt to remove icicles from the roof may be considered part of an ordinary departure from the premises because the icicles impeded his access to the building and defendants neither implicitly nor explicitly forbade plaintiff's removal of the icicles. We respectfully disagree. While plaintiff viewed the icicles as a potential safety hazard, we see nothing in the record that indicates the icicles in fact prevented plaintiff from entering or exiting the building through the entry in question. Moreover, as the dissent acknowledges, there were other means of ingress and egress made available to plaintiff, further belying the suggestion that entering or exiting the building necessitated plaintiff's unsolicited removal of the icicles. In short, this is not a situation in which an invitee was trapped in a building, forced to knock down icicles to gain his escape. Rather, unsolicited, plaintiff voluntarily took it upon himself to correct what he perceived as a safety hazard on the property. In our view, the mere fact that plaintiff perceived the icicles as a safety hazard, and voluntarily chose to personally undertake removal of the icicles, does not transform his conduct into action sanctioned by defendants' invitation to use the property.

know of the hidden danger and the risk involved."). "The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit." *Stitt*, 462 Mich at 596.

Accordingly, in the present case, given that plaintiff qualifies as a licensee, defendants owed him no duty of inspection and no affirmative duty of care to make the premises safe for his activities. *Id.* The only potential duty defendants owed to plaintiff would be to warn him of a hidden danger on the property involving an unreasonable risk of harm, and such duty only exists provided that plaintiff did not know or have reason to know of the danger involved. *Id.*; *Kosmalski*, 261 Mich App at 65. Plainly, in this case, plaintiff knew of the danger posed by falling snow and ice, given that he had heard ice and snow falling from the roof, and he specifically described the process of pushing icicles as "dangerous." Moreover, aside from the fact that he actually knew of the risks, he had ample reason to know of the danger, given that there were massive icicles and large ice chunks on the ground and that he had heard snow and ice fall from the roof. In these circumstances, he had every reason to recognize that snow and ice falling from the roof posed a hazard to those below, particularly if one undertook the removal of icicles on the roof. Because plaintiff knew or had reason to know of the danger posed by falling snow and ice when he undertook the clearing of the icicles, defendants owed no duty, either to warn him of the hazard or to safeguard him from the condition. See *Stitt*, 462 Mich at 596. Thus, no material question of fact remains regarding defendants' duty to plaintiff, and the trial court properly granted summary disposition to defendants.

Affirmed.


/s/ Joel P. Hoekstra