## KOSMALSKI v ST JOHN'S LUTHERAN CHURCH

Docket No. 240663. Submitted December 2, 2003, at Lansing. Decided
    March 4, 2004, at 9:05 A.M. Leave to appeal sought.

Joseph and Kathy Kosmalski brought a premises liability action in
    the Ogemaw Circuit Court against St. John's Lutheran Church,
    seeking damages for injuries sustained by their minor daughter
    Marilyn, who, while providing voluntary child care during vaca-
    tion bible school, was injured when her arm hit a glass door at the
    church that shattered upon impact. The court, Michael J. Baum-
    gartner, J., granted summary disposition in favor of the defendant.
    The plaintiffs appealed.

The Court of Appeals *held*:

1. The defendant's purpose for inviting Marilyn to voluntarily
provide child-care services was a noncommercial purpose. The
court properly found that Marilyn was a licensee upon the defen-
dant's property at the time she was injured.

2. A landowner owes a licensee a duty to warn a licensee of any
hidden dangers the owner knows or has reason to know of if the
hidden danger involves an unreasonable risk of harm and the
licensee does not know or have reason to know of the hidden
danger and the risk involved.

3. The plaintiffs established a genuine issue of material fact
regarding whether the defendant knew or had reason to know of
the hidden danger of the glass door, which was not made with
safety glass. Summary disposition was improperly granted on the
basis that the defendant lacked knowledge of such danger.

4. A genuine issue of material fact exists with regard to the
issue whether the glass door at issue presents an unreasonable
risk of harm. Summary disposition was not properly granted with
regard to this issue.

5. A genuine issue of material fact exists regarding whether
there were intervening and superceding causes of the injuries
received by Marilyn.

Affirmed in part, reversed in part, and remanded.

1. NEGLIGENCE — PREMISES LIABILITY.

>The focus of the analysis in determining a visitor's status as an invitee or a licensee is the property owner's reason for inviting the person onto the premises.

2. NEGLIGENCE — PREMISES LIABILITY.

>A landowner owes a licensee a duty to warn the licensee of any hidden dangers the landowner knows or has reason to know of if the hidden danger involves an unreasonable risk of harm and the licensee does not know or have reason to know of the hidden danger and the risk involved; a landowner must also take into consideration the fact that a child's ability to appreciate the full extent of the risk may be different from that of an adult.

*McAlpine & Associates, P.C.* (by *Mark L. McAlpine* and *Mary A. Kosmalski*), for the plaintiffs.

*Bigler, Berry, Johnston, Sztykiel & Hunt, P.C.* (by *Witold Sztykiel* and *Mary Jo Boerman*), for the defendant.

Before: WHITBECK, C.J., and HOEKSTRA and DONOFRIO, JJ.

HOEKSTRA, J. In this premises liability action, plaintiffs Joseph and Kathy Kosmalski, on behalf of their daughter Marilyn Kosmalski, a minor, appeal as of right the trial court's order granting defendant St. John's Lutheran Church's motion for summary disposition and dismissing the case. We affirm in part, reverse in part, and remand.

Annually, St. John's holds a vacation bible school at its church facility and volunteers are used to help conduct the vacation bible school. Marilyn Kosmalski, who is the granddaughter of a church member, but is not herself a member of St. John's, accepted her grandmother's invitation to be a volunteer during the vacation bible school and was assigned the job of a playground helper. While supervising the playground

during the week of the vacation bible school, Marilyn had an encounter with one of the children that resulted in the child's running away toward the church building. Marilyn followed after the child and as the child pulled open a glass door, Marilyn's extended arm came into contact with it. As a result, the glass shattered, cutting Marilyn's forearm from her wrist to her elbow and causing nerve damage.

Plaintiffs filed the instant premises liability action against St. John's, alleging that Marilyn was an invitee on St. John's premises at the time she was injured and that St. John's was negligent and breached its duty to maintain the premises in a reasonably safe condition by failing to replace the glass in the door with safety glass or otherwise warning or taking other precautions to protect Marilyn from unreasonably dangerous conditions. Ultimately, St. John's responded by filing a motion for summary disposition. In its motion, St. John's maintained that Marilyn was a licensee, rather than an invitee, and that it did not breach its duty to her as a licensee because the glass door was not an unreasonably dangerous condition and, in any event, St. John's was unaware of the condition of the door. Further, St. John's argued that the negligence elements of proximate cause and duty are absent.

The trial court determined that Marilyn was a licensee because St. John's vacation bible school was primarily conducted for the purpose of evangelism and not for a commercial purpose. Further, the trial court concluded that the mere fact that the glass door of St. John's building broke and caused injury did not, by and of itself, show that it was an unreasonably dangerous condition. The trial court also stated that the door was not an unreasonably dangerous condition simply because the most recent safety code requires that glass

doors contain safety glass. Finally, the trial court declined to address St. John's argument regarding proximate cause because it was moot. This appeal ensued.

We review a trial court's ruling on a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Although the trial court did not identify the particular subrule under which it granted summary disposition, it is apparent that the motion was decided under MCR 2.116(C)(10), because the trial court's consideration went beyond the parties' pleadings. A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 163; 645 NW2d 643 (2002).

> In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). *Quinto v Cross & Peters Co*, 451 Mich 358; 547 NW2d 314 (1996). [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

On appeal, plaintiffs first argue that the trial court erred in holding that Marilyn's status at the time she was injured was that of a licensee rather than an invitee. Specifically, plaintiffs contend that the trial court improperly focused on the evangelizing purposes of the vacation bible school rather than the child-care service that Marilyn was invited onto the church property to provide. Plaintiffs maintain that, when analyzed from this perspective under the controlling authority of *Stitt v Holland Abundant Life Fellowship*, 462 Mich

591; 614 NW2d 88 (2000), Marilyn was performing a commercial purpose and must be accorded invitee status, or at a minimum her status must be left to a jury to determine. We disagree.

To establish a prima facie case of negligence, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach caused the plaintiff's injuries, and (4) the plaintiff suffered damages. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). With regard to the first element, the duty owed to a visitor by a landowner depends on whether the visitor is classified as a trespasser, licensee, or invitee. *Stitt, supra* at 596.

In *Stitt, supra,* our Supreme Court addressed the legal framework for determining whether a person who enters upon the land or premises of another is a licensee or an invitee. The Court's discussion of this issue arose in the context of whether the category of public invitee found in § 332 of 2 Restatement Torts, 2d, should be adopted in Michigan. *Id.* at 602-603. Ultimately, the Court rejected the definition of public invitee in § 332, but in doing so the Court specifically held that "persons on church premises for other than commercial purposes are licensees and not invitees." *Id.* at 607. Thus, the question before us in the present case is whether the evidence presented to the trial court, considered in a light most favorable to the plaintiffs, presents a genuine issue of material fact regarding whether Marilyn was on St. John's premises for a commercial purpose.

This Court's resolution of that issue is further informed by the discussion in *Stitt* concerning what constitutes a commercial purpose. In *Stitt*, the Court stated:

> [W]e conclude that the imposition of additional expense and effort by the landowner, requiring the landowner to

inspect the premises and make them safe for visitors, must be directly tied to the owner's commercial business interests. It is the owner's desire to foster a commercial advantage by inviting persons to visit the premises that justifies imposition of a higher duty. In short, we conclude that the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees. Thus, we hold that the owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status: In order to establish invitee status, a plaintiff must show that the premises were held open for a *commercial* purpose. [*Id.* at 604 (emphasis in original).]

In light of this language, we agree with plaintiffs' contention that in determining that Marilyn was a licensee the court below improperly relied on evangelism, rather than finances, as being the primary purpose for St. John's vacation bible school. Pursuant to *Stitt*, the focus of the analysis for determining a visitor's status is "the owner's reason for inviting persons onto the premises . . . ." *Id.* Although presumably St. John's invited the children to attend the vacation bible school for purposes of evangelism, Marilyn's reason for being there was to volunteer as a playground supervisor, or in other words, to facilitate the vacation bible school by providing child care. Thus, in the context of the facts of this case, the question ultimately is whether a volunteer child-care provider at a church's vacation bible school is on the premises for a commercial purpose.

Again, we find the Court's opinion in *Stitt* instructive on the proper framework with which to answer this question, even though the factual predicate in *Stitt* is different from the one presented here. In *Stitt*, a woman accompanied her friend to her friend's church to attend bible study and sustained injury when she tripped and fell in the parking lot. In determining whether the woman was an invitee or a licensee, the Court adopted

the following quotation from the Florida Supreme Court's opinion in *McNulty v Hurley*, 97 So 2d 185, 188 (Fla, 1957):[1]

> "[A]n invitation to enter and worship, whether it be either express or implied, does not constitute one who accepts the invitation an invitee in the legal sense. In order for such relationship to arise the person entering onto the premises, i.e. the invitee, must have done so for purposes which would have benefited the owner or occupant of the premises, i.e. the invitor, or have been of mutual benefit to the invitee and the invitor. And as we view it this benefit must be of a material or commercial rather than of a spiritual, religious, or social nature." [*Stitt, supra* at 605.]

In the present case, Marilyn, at the time she was injured, was a teenage girl who was visiting her grandmother during her summer vacation. The grandmother, who was a member at St. John's, invited Marilyn, who was a member of a different Christian faith, to participate as a volunteer during the church's vacation bible school.[2] Although Marilyn herself was not a member at St. John's, she accepted her grandmother's invitation. Under these circumstances, we do not discern any basis

---

[1] The *Stitt* Court, acknowledging that "[t]he Florida Supreme Court has since moved away from *McNulty* and has adopted § 332 of the Restatement," stated that it "continue[s] to find *McNulty's* reasoning persuasive." *Stitt, supra* at 604 n 10.

[2] See *Stitt, supra* at 606 n 11:

> The solicitation of entirely voluntary donations by a nonprofit organization is plainly not a commercial activity. Accordingly, a church providing an opportunity for voluntary donations during a religious service that are in no way required to attend the service, i.e., passing a collection plate, does not transform one who attends the church service and elects to make a donation from a licensee into an invitee. Indeed, we imagine that many religious individuals would find it offensive to have their voluntary donation to a church regarded as part of a business or commercial transaction, rather than as a gift intended to aid in various religious good works.

upon which to conclude that Marilyn volunteered to provide child-care services for a "material or commercial purpose" rather than one of "a spiritual, religious or social nature."

Nor do we believe that the benefit to St. John's is of a material or commercial nature. Plaintiffs argue that child-care services are recognized throughout the country as a service that is bought and sold and is therefore commercial. However, we reject the assumption underlying plaintiffs' argument that because a particular service such as child care can have a commercial purpose in some or even most circumstances it must be recognized as commercial in all situations, including for purposes of determining invitee status. Rather, the focus as determined by *Stitt* is on the owner's reason for inviting the person onto the premises. Thus, the required analysis is an assessment case by case of the particular circumstances and reasons for the injured person's presence on the property.

Here, the reason for St. John's invitation to Marilyn to participate in its vacation bible school was as a *volunteer* child-care provider. Although this may have relieved St. John's of potentially paying for the service if volunteers could not be secured, the fact remains that St. John's purpose for inviting Marilyn as a volunteer was indisputably noncommercial. The relationship between Marilyn and St. John's did not have the pecuniary quid pro quo that *Stitt* requires for imposing the higher duty of care owed to invitees. *Id.* at 604. Consequently, we conclude that Marilyn's status was that of a licensee upon St. John's property at the time she was injured.[3]

---

[3] We note that for the first time on appeal plaintiffs argue that holding that Marilyn is a licensee "extends immunity to non-profits and violates the establishment clause." Immunity is a doctrine that, if applicable,

Next, plaintiffs argue that they established a genuine issue of material fact regarding whether St. John's breached the duty it owed to a licensee and, consequently, the trial court's grant of summary disposition must be reversed. We agree.

In *Stitt*, our Supreme Court stated the duty owed by a landowner to a licensee:

> A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. [*Wymer v Holmes*, 429 Mich 66, 71 n 1; 412 NW2d 213 (1987)]. A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit. *Id.* Typically, social guests are licensees who assume the ordinary risks associated with their visit. *Preston* [*v Sleziak*, 383 Mich 442, 451; 175 NW2d 759 (1970)]. [*Stitt, supra* at 596.]

Decades before the *Stitt* decision, in *Preston v Sleziak*, 383 Mich 442, 453; 175 NW2d 759 (1970),[4] our Supreme Court indicated that "[t]he duty which occupiers of land owe their licensees is best expressed by 2 Restatement of Torts (2d), § 342, p 210." Section 342 provides:

> "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> "(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreason-

would provide a complete defense to this action. Black's Law Dictionary (7th ed). Obviously, determining that Marilyn is a licensee rather than invitee of St. John's does not provide a complete defense. Therefore, we conclude that the establishment claim is without merit.

[4] *Stitt* overruled *Preston* in part, but only to the extent that *Preston* can be read to adopt the category of public invitee as contained in § 332 of the Restatement. *Stitt, supra* at 603.

able risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

"(c) the licensees do not know or have reason to know of the condition and the risk involved." [*Preston, supra* at 453, quoting 2 Restatement Torts (2d), § 342, p 210.]

This Court, in *Burnett v Bruner*, 247 Mich App 365; 636 NW2d 773 (2001), held that

a landowner owes his licensee a duty only to warn of hidden dangers the landowner knows or has reason to know of, and only if the licensee does not know or have reason to know of the dangers involved. The landowner does not owe the licensee a duty to inspect or to repair in order to make the premises safe for the licensee's visit. [*Id.* at 378.]

We conclude that the principles announced in these cases establish that the law in Michigan requires that a landowner owes a licensee a duty to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the hidden danger involves an unreasonable risk of harm and the licensee does not know or have reason to know of the hidden danger and the risk involved.

In the present case, the parties dispute whether St. John's knew or had reason to know of the hidden danger presented by the glass door, which was not made of safety glass, and whether the door involved an unreasonable risk of harm. Turning first to St. John's knowledge, we conclude that plaintiffs established a genuine issue of material fact regarding whether St. John's knew or had reason to know of the hidden danger of the glass door. Plaintiffs provided the minutes of a 1993 meeting of the executive council of St. John's that show that a council member raised the issue

whether the door between the old and new wings of the church was equipped with safety glass and instructions were given to make an investigation of the matter. Plaintiffs also provided an affidavit from that council member that indicated that he recalled raising this concern. According to that council member's affidavit, he raised the issue because he had "observed children pushing their hands on the glass pane to open the door," knew that children used the door frequently, and was aware of the hazards associated with nonsafety glass. Also, the affidavit indicated children used the door to access the area where they attended Sunday school, vacation bible school, and other activities. While it is not clear from the trial court record, the briefs, or the oral arguments made to this Court whether the glass door that shattered when Marilyn's arm came into contact with it is the same door that the council member spoke of when questioning whether the door was equipped with safety glass, that detail does not affect our analysis. The council member's mention of a nonsafety-glass concern with respect to a door in the old portion of the church through which children pass is sufficient to raise a genuine issue of material fact concerning whether St. John's knew or had reason to know of the hidden danger of nonsafety-glass doors on its premises. Although plaintiffs point to other evidence as well, we conclude that this evidence alone raises a fact question for the trier of fact to resolve and, consequently, summary disposition cannot be granted on the basis of lack of knowledge by St. John's.

With regard to whether the hidden danger of a glass door presents an unreasonable risk of harm, we also conclude that a genuine issue of material fact exists. Plaintiffs presented evidence that the door in question provided access from a playground to an activity room

that was regularly used by children. Comment b of § 342 of the Restatement states:

> If the licensees are adults, the fact that the condition is obvious is usually sufficient to apprise them, as fully as the possessor, of the full extent of the risk involved in it. On the other hand, the possessor should realize that the fact that a dangerous condition is open to the perception of child licensees may not be enough to entitle him to assume that they will appreciate the full extent of the risk involved therein. [2 Restatement Torts, 2d, § 342, comment b, p 210.]

As explained by the Restatement, a landowner is required to take into consideration that a child's ability to "appreciate the full extent of the risk" is different from that of an adult. Consequently, we believe that whether a glass door used by adults presents an unreasonable risk of harm is a different question than whether a glass door used by children presents an unreasonable risk of harm. Because children could use this door to access the activity room and children are unlikely to appreciate the risk of harm that may result from the shattering of a nonsafety-glass door, we conclude that plaintiffs have established a genuine issue of material fact regarding whether the door at issue here involved an unreasonable risk of harm. Thus, on this basis too, we find that summary disposition is not warranted.

Because we reverse the trial court's grant of summary disposition with regard to its findings that St. John's lacked the requisite knowledge and that the glass door did not involve an unreasonable risk of harm, we must proceed to address St. John's claims that an intervening cause extinguishes any liability and that there is an absence of any evidence of the elements of proximate cause and duty. Specifically, St. John's argues that the acts of Marilyn pursuing the child by running after him and the child's throwing or slamming the

door into Marilyn's arm are intervening and superceding causes of her injuries and were not foreseeable, thus relieving St. John's of any liability. However, we need not engage in an extensive analysis of this issue because it is apparent from our examination of the record that evidence exists that creates a factual question regarding whether Marilyn was running and whether the door was thrown or slammed into her arm. Simply stated, the factual predicate upon which St. John's relies for this argument is disputed and raises a genuine issue of material fact for the trier of fact to resolve.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.