# STATE OF MICHIGAN

# COURT OF APPEALS

RACHELLE C. JACKSON,

       Plaintiff-Appellant,

v

ROGER F. BERENS, STEVEN J. LANGELAND,
NOTIER-VER-LEE-LANGELAND CHAPEL,
INC., doing business as LANGELAND
STERENBERG FUNERAL HOMES,

       Defendants-Appellees,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant.

UNPUBLISHED
October 11, 2016

No. 329320
Kent Circuit Court
LC No. 14-000841-NI

Before: SHAPIRO, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

In this action for noneconomic tort damages under the no-fault act, MCL 500.3101 *et seq.*, the trial court granted summary disposition under MCR 2.116(C)(10) to defendant Roger Berens as well as defendants Steven Langeland (hereinafter referred to individually as "Langeland") and Notier-Ver-Lee-Langeland Chapel, Inc., doing business as Langeland Sterenberg Funeral Homes (collectively, "the Langeland defendants"). Plaintiff now appeals as of right. Because plaintiff presented sufficient evidence of a threshold injury to survive a motion under MCR 2.116(C)(10), we reverse the trial court's grant of summary disposition to Berens and the Langeland defendants, and we remand for further proceedings.

The present case relates to two separate automobile accidents involving plaintiff. Plaintiff's first motor vehicle accident occurred on the afternoon of January 31, 2013, when she was struck from behind by a vehicle driven by Berens. Several months later, on August 20, 2013, plaintiff was in a second automobile accident with Langeland, when he struck the side of plaintiff's vehicle as they were both attempting to make right hand turns from adjacent lanes. After each accident, plaintiff underwent various treatments for injury to her spine, culminating in surgery in 2014, and she could not perform some of her normal activities, including walking,

gardening, and activities which required long periods of sitting such as watching TV, using a computer, and attending church. As it relates to this appeal, plaintiff seeks to collect noneconomic tort damages from both Berens and the Langeland defendants under MCL 500.3135(1), which requires plaintiff to establish that she suffered a serious impairment of a body function caused by defendants' ownership, maintenance, or use of a motor vehicle.[1]

In the trial court, Berens and the Langeland defendants filed separate motions for summary disposition under MCR 2.116(C)(10), asserting that no material question of fact remained with regard to whether plaintiff suffered a serious impairment of a body function that affected her ability to lead her normal life. In particular, Berens maintained that, before the second accident, plaintiff had fully "recovered" from her injuries relating to the first accident and that, in the timeframe between the first and second accidents, she had not suffered any real impact on her general ability to lead her normal life. In comparison, according to the Langeland defendants, plaintiff complained of the same injuries arising from both accidents, her treatment has been continuous since the first accident, and any changes to her ability to lead her normal life began after her first accident. In these circumstances, the Langeland defendants contended that any injury was attributable to the first accident and that the second accident did not affect plaintiff's general ability to lead her normal life.

The trial court granted summary disposition to both defendants. With regard to Berens, the trial court based its decision on two basic findings: (1) before the second accident, plaintiff had recovered from her injuries sustained in the first accident and was thus able to lead her normal life, and (2) although plaintiff did obtain assistance for various tasks following the first accident, she did so because she was "kind of shook up" and not because of any physical injuries. In contrast, with respect to the Langeland defendants, the trial court determined that plaintiff suffered no new injuries in the second accident which affected her ability to lead her normal life. More specifically, the trial court determined that plaintiff's claims "largely related to conditions in her lower spine which pre-existed the second accident." The trial court also dismissed the evidence of plaintiff's inability to lead her normal life after the second accident, finding insufficient proof that she had people come to the home to cook for her and massage her surgical incision. For these reasons, the trial court granted summary disposition to both defendants under MCR 2.116(C)(10). Plaintiff now appeals as of right.

On appeal, plaintiff argues that the trial court erred by granting defendants' respective motions for summary disposition because plaintiff has met the threshold requirements of MCL 500.3135(1) as required to maintain an action for noneconomic tort damages. Specifically, plaintiff asserts that she has shown an objectively manifested impairment to her lumbar spine, which, though degenerative in nature, was aggravated by the accident with Berens and exacerbated further by the accident with Langeland. According to plaintiff, the impairment caused by her spinal injury affects her general ability to lead her normal life, including, for example, her ability to walk for exercise, bend, participate in church and other activities.

---

[1] Plaintiff also named her insurer, State Farm Insurance Company, as a defendant. Her claims for no-fault benefits against State Farm settled, and State Farm is not a party to this appeal.

Viewing the record in a light most favorable to plaintiff, we conclude that plaintiff has shown the existence of a material question of fact regarding her experience of a threshold injury under MCL 500.3135(1), and thus the trial court erred by granting defendants' respective motions for summary disposition under MCR 2.116(C)(10).

We review de novo a trial court's decision to grant a motion for summary disposition. *Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 59; 680 NW2d 50 (2004). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Kosmalski*, 261 Mich App at 59. When reviewing a motion under MCR 2.116(C)(10), the trial court must consider the affidavits, pleading, depositions, admissions, and other evidence in a light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.* "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

"A party injured through the ownership, operation, maintenance, or use of a motor vehicle must seek recovery within the strictures of the no-fault act." *Diallo v LaRochelle*, 310 Mich App 411, 415; 871 NW2d 724 (2015) (citation omitted). Subject to certain exceptions, with the enactment of MCL 500.3135, the Legislature abolished tort liability for harm arising from the ownership, maintenance, or use of a motor vehicle. See MCL 500.3135(3); *American Alternative Ins Co, Inc v York*, 470 Mich 28, 30; 679 NW2d 306 (2004). Relevant to the present case, one of the exceptions to the abolishment of tort liability is the serious impairment of body function exception, which requires a plaintiff to plead and prove a threshold injury as set forth in MCL 500.3135(1). By statute, a "serious impairment of body function" means "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).[2]

When considering whether a plaintiff has established a threshold injury, the trial court's first step is to determine "whether there is a factual dispute regarding the nature and the extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met." *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010). Once the court determines that it may decide whether the serious impairment threshold has been met as a matter of law, the court then turns to the three-prong test set forth by the Michigan Supreme Court in *McCormick*. In particular, to establish that a person has suffered a "serious impairment of body function," a plaintiff must show: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *Id.* at 195. "The serious impairment analysis is inherently

---

[2] Plaintiff's complaint also asserted that she suffered a permanent serious disfigurement, but she has not argued this point on appeal. We consider the issue of disfigurement abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015).

fact- and circumstance-specific and must be conducted on a case-by-case basis," mindful that "what is important to one is not important to all." *Id.* at 215-216.

In dispute for purposes of appeal in the present case are the first and third prongs.[3] Relevant to the first prong, an "objectively manifested impairment" refers to an impairment that is "observable or perceivable from actual symptoms or conditions." *Id.* at 215. The term "impairment" relates to the effect of an injury; consequently, when considering whether there is an "impairment," "the focus 'is not on the injuries themselves, but how the injuries affected a particular body function.'" *Id.* at 197. To establish that the impairment is "objectively manifested," the plaintiff must "introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering." *Id.* at 198. Notably, aggravation of a preexisting condition can constitute a compensable threshold injury. *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009). "Regardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered symptoms from that condition." *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000).

In terms of the third *McCormick* prong, to affect the person's ability to lead her normal life "is to have an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id.* As set forth in *McCormick*, there are three important considerations for conducting this comparison of the person's pre- and post-accident life. First, the person's life need only be "*affected*, not destroyed," meaning "courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id.* Second, because it is a person's ability to live her normal life that must be affected, as opposed to the person's normal manner of living, "there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id.* Finally, although temporal considerations are not totally irrelevant, there is no express temporal requirement regarding how long an impairment must last to constitute a threshold injury. *Id.* at 203, 222.

Turning to the present facts, the evidence showed that plaintiff was in an automobile accident with Berens in January of 2013. Following this accident, plaintiff underwent an MRI which showed injuries to plaintiff's lumbar spine, including disc desiccation, bulging disc annulus, and interspace narrowing in relation to L5-S1. Although these changes were undisputedly degenerative in nature, plaintiff's testimony indicates that she was "healthy" and asymptomatic before her accident with Berens. In comparison, after the accident, plaintiff experienced significant pain and could not perform many of her normal activities, such as walking 5 miles daily for exercise as she did before the accident, maintaining her garden,

---

[3] In terms of the second prong, the injury in question is a spinal injury, and the ability to use the back is considered an important body function. *Chumley v Chrysler Corp*, 156 Mich App 474, 481; 401 NW2d 879 (1986). Defendants have not contended otherwise.

attending church, and performing various household tasks.[4] Viewed in a light most favorable to plaintiff, this evidence was sufficient to allow reasonable minds to conclude that, as a result of the accident with Berens, plaintiff suffered an objectively manifested impairment which had some effect on her general ability to lead her normal life. *McCormick*, 487 Mich at 202-203.

It is true that, after the first accident, plaintiff received various medical treatments, including pain injections and spinal adjustments. At her deposition, plaintiff testified that, by the summer of 2013, she had "recovered" with treatment and was "feeling wonderful." It was largely based on plaintiff's claims of recovery that the trial court granted summary disposition to Berens. However, this was erroneous because there is no temporal requirement for how long an impairment must last to satisfy MCL 500.3135(1). *McCormick*, 487 Mich at 203, 222. Plaintiff's claim of "recovery" may ultimately factor into a jury's determination of the extent of Berens's liability; but, on the facts of this case, it does not negate a finding that plaintiff suffered a compensable threshold injury and thus her "recovery" does not entitle Berens to summary disposition under MCR 2.116(C)(10). Consequently, the trial court erred by granting Berens's motion for summary disposition.

The trial court similarly erred by granting summary disposition to the Langeland defendants based on the conclusions that plaintiff's condition preexisted her second accident and that her ability to lead her normal life did not change after the second accident. Taken in a light most favorable to plaintiff, the evidence—including plaintiff's deposition and medical records—shows that plaintiff had "recovered," or at least shown significant improvement, in the time between her first and second accident. Indeed, according to plaintiff's testimony and medical records, before the second accidents, she was "feeling wonderful" and she had resumed some of her normal activities to some extent such as walking, weeding her garden, watering her yard, and attending church, and she was even doing things like jumping off of boats. In comparison, according to plaintiff's testimony, the second accident "tremendously" aggravated her original condition. Following the second accident, plaintiff reported increased pain, she eventually underwent surgery, and she now wears a back brace. After the second accident, plaintiff reported a decrease in church attendance, an inability to walk for exercise, difficulty with basic tasks such as putting on her shoes, an inability to sit for long periods to do things like use her computer or watch television, and an inability to show affection to family, such as hugs, because of issues with her back.[5] According to plaintiff, despite surgery, she has not fully recovered from her second accident and she remains unable to perform many of her normal activities.

---

[4] By concluding that plaintiff received assistance around her home solely for emotional reasons, as opposed to a physical need, the trial court failed to view the evidence in a light most favorable to plaintiff. Plaintiff testified that she was so "shook up" that she needed help managing her medical care, which prompted her to obtain a "case manager." However, plaintiff also testified that it was due to her pain that she employed an agency to perform various household tasks such cleaning her home, shoveling her walk, and mowing the lawn.

[5] By focusing only on the frequency with which plaintiff had people come to her home to cook and massage her surgical incision following the second accident, the trial court ignored much of

Given plaintiff's apparent progress toward recovery from any symptoms caused by the first accident and her worsening symptoms after the second accident, the August accident could reasonably be seen as an aggravation of her preexisting condition and a prolonging of her recovery. And, as noted, a plaintiff can establish an injury and, receive compensation, for the aggravation or exacerbation of a preexisting condition. *Fisher*, 286 Mich App at 63. Further, given evidence that plaintiff had begun to improve and return to some of her normal activities before the second accident, the second accident can reasonably be seen as affecting her general ability to lead her normal life. See *Benefiel v Auto-Owners Ins Co*, 482 Mich 1087; 759 NW2d 814 (2008). Overall, material questions of fact remain, and the trial court erred by granting the Langeland defendants' motion for summary disposition.

Reversed and remanded for further proceedings. We do not retain jurisdiction. Having prevailed in full, plaintiff may tax costs pursuant to MCR 7.219.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto

---

the evidence favorable to plaintiff's position and ultimately failed to view the evidence in a light most favorable to plaintiff as the nonmovant. This was erroneous.