*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATRESE HUNTER,

        Plaintiff-Appellant,

and

OAKWOOD HEALTHCARE INC,

        Intervening Plaintiff,

v

IRMA ABRIGO,

        Defendant,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY,

        Defendant-Appellee.

UNPUBLISHED
November 21, 2019

No. 343320
Wayne Circuit Court
LC No. 16-012918-NI

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Plaintiff, Latrese Hunter, appeals the trial court's order granting summary disposition in favor of defendant, Progressive Michigan Insurance Company. We reverse and remand for proceedings consistent with this opinion.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

This matter arises from Hunter's alleged fraud at the time she entered into a no-fault insurance contract with Progressive. The crux of the issue on appeal is whether Hunter resided with a friend at a home on Apple Creek Drive in Plymouth, Michigan, or with family members at

a home on Sussex Street in Detroit, Michigan, when she submitted an application for a no-fault insurance policy with Progressive.

On October 3, 2015, Hunter entered into a contract for no-fault insurance with Progressive. On the insurance application, Hunter represented that she resided on Apple Creek Drive in Plymouth. Hunter also indicated that her vehicle was garaged in Plymouth. Based on the information provided by Hunter, Hunter was charged a premium of $982.[1] The insurance policy provided, in relevant part, the following:

**FRAUD OR MISREPRESENTATION**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance.

2. concealed or misrepresented any material fact or circumstance; or

3. engaged in fraudulent conduct;

at the time of the application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

On April 7, 2016, Hunter was involved in a motor vehicle accident. Hunter was allegedly injured and was transported to the hospital via ambulance. Hunter was admitted to the hospital, and the Detroit address was listed as Hunter's address on the medical documents. After Hunter was discharged from the hospital, she lived at the home on Sussex Street in Detroit.

Hunter made a claim for personal protection insurance benefits ("PIP benefits") through Progressive. Hunter sought compensation for replacement services, medical mileage, medical bills, and wage loss. After receiving Hunter's claim, Progressive began to investigate whether Hunter's vehicle was actually garaged at the Plymouth address. A representative from Progressive contacted the owner of home that was listed on Hunter's application. Although the home owner initially reported that Hunter had lived with her at the Plymouth address, she later admitted that Hunter had never lived there. According to the Plymouth home owner, she had given Hunter permission to use the Plymouth address because Hunter wanted a lower insurance premium. The home owner indicated that she lied to the Progressive representative because she was "scared" because she knew that Hunter was "desperate." Based on its investigation, Progressive refused to pay PIP benefits to Hunter.

---

[1] According to Progressive's Litigation Underwriting Specialist, Hunter's premium would have been $2,165 if she had listed the Detroit address on her application for insurance.

On October 11, 2016, Hunter filed a complaint, seeking PIP benefits from Progressive. On November 7, 2016, Progressive answered the complaint and filed affirmative defenses. In relevant part, Progressive alleged that Hunter "intentionally misrepresented and/or concealed material facts in her October 2015 application for insurance." Thereafter, Progressive sent Hunter a rescission notice and issued a refund of Hunter's paid premiums. Hunter did not cash the refund check.

After the close of discovery, Progressive moved the trial court for summary disposition based on assertions that Hunter was precluded from obtaining PIP benefits because the evidence established that she had misrepresented the garaging address of the vehicle when applying for insurance, thereby rendering the insurance policy void *ab initio*. Hunter opposed Progressive's motion for summary disposition, arguing that she was residing at the Plymouth address at the time she submitted the application for insurance and through the date of the April 7, 2016 accident.

Following oral argument, the trial court granted Progressive's motion for summary disposition. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). Although the trial court did not identify the subrule under which it granted summary disposition, it is apparent that the motion was granted under MCR 2.116(C)(10) because the trial court's consideration went beyond the parties' pleadings. *Kosmalski ex rel Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 59; 680 NW2d 50 (2004). In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), this Court considers "affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in the light most favorable to the party opposing the motion." *Smith*, 460 Mich at 454 (citation omitted). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at 454-455.

When the truth of a material factual assertion made by a party is contingent upon credibility, summary disposition should not be granted. *Foreman v Foreman*, 266 Mich App 132, 136; 701 NW2d 167 (2005). A court may not make factual findings or weigh credibility when deciding a motion for summary disposition. *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005). Summary disposition is improper if the evidence is in conflict. *Lysogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003). Inconsistencies in statements given by witnesses cannot be ignored, *White v Taylor Distrib Co*, 482 Mich 136, 142; 753 NW2d 591 (2008), and summary disposition is inappropriate where evidence offered in the trial court is capable of supporting different conclusions and creates a question of fact, *Shelby Charter Twp v Papesh*, 267 Mich App 92, 103; 704 NW2d 92 (2005). There is no prohibition on contradicting statements that "were not made under oath or as part of legal proceedings." *Id*.

This Court also reviews de novo questions of statutory interpretation and the proper interpretation of a contract. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). This Court reviews the interpretation of an insurance contract just like any other contract. *McGrath v Allstate Ins Co*, 290 Mich App 434, 439; 802 NW2d 619 (2010).

## III. ANALYSIS

Hunter argues that the trial court erred by granting Progressive's motion for summary disposition because she presented sufficient evidence to support that she was residing at the Plymouth address from October 3, 2015 through April 7, 2016. We agree.

It is necessary to interpret the insurance contract in order to determine whether the trial court erred when granting summary disposition in favor of Progressive. The language of insurance contracts should be read as a whole and must be construed to give effect to every word, clause, and phrase. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). When the policy language is clear, a court must enforce the specific language of the contract. *Hensier v Frankenmuth Mut Ins Co*, 449 Mich 155, 160; 534 NW2d 502 (1995). When an insurance company relies on a policy's exclusionary clause as an affirmative defense against the policyholder's lawsuit, the insurance company has the burden to prove that the exclusion applies. *Shelton v Auto Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017).

The fraud-exclusion clause in the no-fault policy in this case provides:

> This policy was issued in reliance upon the information provided on **your**[2] insurance application. **We** may void this policy at any time, including after the occurrence of an accident or loss, if **you**:
>
> 1. made incorrect statements or representations to **us** with regard to any material fact or circumstance.
>
> 2. concealed or misrepresented any material fact or circumstance; or
>
> 3. engaged in fraudulent conduct;
>
> at the time of the application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

---

[2] "**Your**" and "**you**" is defined as "a person shown as a named insured on the **declarations page**." "**We**" and "**us**" is defined in the insurance policy as "the underwriting company providing the insurance, as shown on the **declarations page**."

Thus, the insurance policy clearly and unambiguously states that the policy can be rendered void if the named insured misrepresents any material fact or circumstance at the time the application is submitted to the company providing the insurance.

To prove the applicability of this fraud exclusion, Progressive must show that:

> (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of a claim. [*Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014), citing *Mina v Gen Star Indemnity Co*, 218 Mich App 678, 686-687; 555 NW2d 1 (1996), rev'd in part on other grounds, 455 Mich 866 (1997) (citation omitted).]

In this case, it is undisputed that Hunter's policy was rescinded because she represented on her application for no-fault insurance that she lived in Plymouth and that the vehicle would be garaged in Plymouth. Because the application and the policy do not define the term "residence," we must turn to dictionary definitions to decipher its meaning. See *Citizens Ins Co v Pro-Seal Serv Group, Inc*, 477 Mich 75, 84; 730 NW2d 682 (2007).

"Residence" is defined as "the act or fact of dwelling in a place for some time" and "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Dwelling" is defined as "a shelter (as a house) in which people live," and "live" is defined as "to occupy a home." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, "residence" in the context of the insurance policy at issue in this case means a house or place of shelter where the named insured actually lives and occupies that is not merely a place of temporary sojourn. See also *McGrath*, 290 Mich App at 443 ("[T]he term 'reside' requires that the insured actually live at the property."). Importantly, by distinguishing a residence from a domicile, the dictionary's definition of "residence" does not imply one's intent to remain permanently or indefinitely. See *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 493; 835 NW2d 363 (2013) (defining "domicile"). See also *McGrath*, 290 Mich App at 443 ("[R]eside" is not synonymous with the legal definition of the term "domicile," which "may have a legal or technical meaning beyond mere physical presence, including the intent to live at that location at some time in the future . . . .").

Applying the definition of "residence" to the facts of this case, we conclude that there is a question of fact as to whether Hunter "dwell[ed] . . . for some time" and "actually live[d]" at the Plymouth address when she applied for insurance in October 2015. Record evidence supports that Hunter lived at the Plymouth address between October 3, 2015 and April 7, 2016 and that she did not reside at the Detroit address during that time. Hunter changed the address on her driver's license to the Plymouth address before she applied for insurance through Progressive,

and she had mail delivered to her at the Plymouth address.[3]  Additionally, evidence supports that Hunter had her own bedroom and kept personal possessions at the Plymouth address.  She also had a key to the Plymouth home at one point and paid rent to the homeowner, albeit on an inconsistent basis.  Importantly, Hunter was present at the Plymouth address on a daily basis in order to sleep, groom herself, and clean the areas of the home in which she occupied.  Although Hunter did not spent a substantial amount of time at the Plymouth address, Hunter's deposition testimony establishes that she was required to be at the Detroit address on a daily basis because of family obligations.  Further, the definition of residence referenced above does not require an individual to spend a majority of his or her time at the home in question; rather, the definition of residence only requires that an individual actually live in and occupy the home.

Progressive presents evidence to support that Hunter never informed the Wayne County Family Court that she was residing at the Plymouth address even though she was required to do so pursuant to a court order[4] and that Hunter continued to use the Plymouth address after she moved to the Detroit address after the April 2016 accident.  Although we agree that this evidence tends to support that Hunter did not actually live at the Plymouth address and instead used it as a mailing address, this Court cannot make credibility determinations, *In re Handelsman*, 266 Mich App at 437, and is required to view the evidence in a light most favorable to the nonmoving party when reviewing a motion for summary disposition, *Smith*, 460 Mich at 454.  Further, the question of whether an insured has committed fraud is generally a question for the jury to decide. See *Meemic Ins Co v Fortson*, 324 Mich App 467, 473; 922 NW2d 154 (2018).

Taking the evidence in a light most favorable to Hunter, we conclude that Hunter provided sufficient evidence to create a genuine issue of material fact as to whether she "dwell[ed] . . . for some time" and "actually live[d]" at the Plymouth address on October 3, 2015. The trial court therefore erred by granting summary disposition in favor of Progressive based on

---

[3] Hunter argues on appeal that the trial court improperly determined that because the documentary evidence that supported that Hunter received mail at the Plymouth address amounted to inadmissible hearsay, it could not be considered when deciding the motion for summary disposition.  We agree with Hunter that the evidence did not constitute hearsay. Nonetheless, because the record establishes that the trial court ultimately considered the documentary evidence, the trial court's initial improper determination that the evidence amounted to inadmissible hearsay is not dispositive.

[4] Progressive argues that this Court should disregard certain evidence presented by Hunter because Hunter "historically represented" that she lived at the Detroit address throughout the pendency of child custody and support proceedings.  We reject Progressive's argument because there is no evidence before this Court to support that Hunter indicated under oath in relation to the child custody proceedings that she resided at the Detroit address from October 2015 through April 2016.  See *Shelby Charter Twp*, 267 Mich App at 103 ("We decline to extend the general rule against contradicting deposition testimony with an affidavit in the summary disposition context to prevent a party from contradicting statements that were not made under oath or as part of legal proceedings.").

its finding that Hunter materially misrepresented her residence address and the garaging address when procuring the insurance policy.

Progressive argues, as an alternative ground for affirmative relief, that the trial court properly granted summary disposition because the undisputed record evidence establishes that Hunter made misrepresentations when presenting her wage-loss claim to Progressive. This argument was not addressed by the trial court when the court decided Progressive's motion for summary disposition and was not fully presented to the trial court. Consequently, we decline to consider the argument and reverse and remand to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro