*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA MOLITORIS,

        Plaintiff-Appellant,

v

SAINT MARY MAGDALEN
CATHOLIC CHURCH,

        Defendant-Appellee.

UNPUBLISHED
January 4, 2024

No. 364820
Livingston Circuit Court
LC No. 22-31366-NO

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

PER CURIAM.

The landscape of slip-and-fall jurisprudence in Michigan changed dramatically on July 28, 2023, when our Supreme Court rendered its opinion in *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95; ___ NW2d ___ (2023), which reframed the analysis of open and obvious defects in premises liability cases filed by invitees. But in designing that new approach, our Supreme Court reaffirmed "that the three traditional status-based categories—licensee, invitee, and trespasser—remain" the law in Michigan. *Id*. at 143. Plaintiff, Linda Molitoris, insists that she can avail herself of the new approach because she was an invitee when she fell on ice in a church parking lot. The trial court rejected plaintiff's premises liability claim, characterizing her as a licensee (rather than an invitee) and concluding that she cannot meet any of the requirements she must satisfy to prevail on a claim for premises liability as a licensee. We agree, so we shall affirm the trial court's award of summary disposition to defendant under MCR 2.116(C)(10).

## I. FACTUAL BACKGROUND

Plaintiff is both a parishioner and a volunteer at defendant, Saint Mary Magdalen Catholic Church ("the Church"). On February 22, 2021, plaintiff went to the Church to perform volunteer work at Magdalen's Kitchen, a weekly event where free meals are prepared and served to those in the community. Plaintiff arrived at the Church at 3:00 p.m. that day. She did not encounter issues with snow or ice as she walked through the parking lot and went into the Church. Plaintiff did not go outside again until she left the Church at approximately 7:00 p.m. Plaintiff exited through the same door she had used to enter the Church, and then she walked towards her vehicle in the parking

lot. Plaintiff asserts that she was looking where she was going and did not see snow or ice in the parking lot. Plaintiff does not remember precipitation falling at that time, and she does not recall the pavement in the parking lot appearing wet. Plaintiff insists that the parking lot was dark at the time she left and that the lights in the parking lot were not on. As plaintiff stepped off the sidewalk and into the parking-lot area, she suddenly slipped and fell to the ground. Plaintiff alleges that, as she was on the ground, she could feel ice in the area around her. As a result of her fall, plaintiff suffered a fractured left wrist that required surgery, fractures to her pelvis, and a fractured hip.

On January 18, 2022, plaintiff filed this action against the Church for ordinary negligence and premises liability. When the Church sought summary disposition, plaintiff agreed to dismiss her claim for ordinary negligence and proceed only on a premises-liability theory. Plaintiff argued that the Church owed her a duty as an invitee. The Church asserted that it did not owe her a duty based on the fact that plaintiff was a licensee when she suffered her injuries. The trial court decided from the bench on January 5, 2023, that plaintiff was a licensee and awarded summary disposition under MCR 2.116(C)(10) to the Church on that basis. The trial court thereafter memorialized its ruling in an order entered on January 24, 2023. This appeal now follows.

## II. LEGAL ANALYSIS

Plaintiff argues on appeal that the trial court erred in characterizing her as a licensee, rather than an invitee, because that determination must be made by a jury. Beyond that, plaintiff contends that the Church breached a duty it owed to her and had constructive notice of the ice on which she fell. For those reasons, plaintiff asserts that the trial court erred in awarding summary disposition to the Church under MCR 2.116(C)(10). "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion may be granted only "when there is no genuine issue of material fact." *Id*. " 'A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ.' " *Id*. Applying these standards, we must decide whether the trial court properly determined that plaintiff could not succeed on her premises liability claim.

## A. INVITEE OR LICENSEE

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed*, 512 Mich at 110. "The first element, duty, 'is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.' " *Id*. "In the context of premises liability, 'a landowner's duty to a visitor depends on that visitor's status.' " *Id*. at 111. Michigan law recognizes "three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614 NW2d 88 (2000). Each of the "categories corresponds to a different standard of care that is owed to those injured on the owner's premises." *Id*. "Thus, a landowner's duty to a visitor depends on that visitor's status." *Id*.

The outcome of plaintiff's premises-liability claim largely turns on whether plaintiff was a licensee or an invitee when she fell on ice in the Church parking lot. A landowner like the Church owes a much greater duty to an invitee than to a licensee. A licensee is someone permitted to enter the premises of another by virtue of the landowner's consent. *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013). A landowner owes a licensee only a duty to warn of hidden dangers "the landowner knows or has reason to know of, and only if the licensee does not know or have reason to know of the dangers involved." *Burnett v Bruner*, 247 Mich App 365, 378; 636 NW2d 773 (2001). Significantly, a landowner "owes no duty of inspection or affirmative care to make the premises safe" for a visit by a licensee. *Stitt*, 462 Mich at 596.

In contrast, an invitee is a person "who enters upon the land of another upon an invitation" that "carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises" and make the premises safe for the invitee. *Id*. at 596-597. A landowner "has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe[.]" *Id*. at 597. "Thus, an invitee is entitled to the highest level of protection under premises liability law." *Id*. On appeal, plaintiff contends that, when she fell in the Church parking lot, she was an invitee entitled to the highest level of premises liability law protection. For its part, the Church insists that the trial court properly characterized plaintiff at that point in time as a mere licensee.

Individuals who enter onto church property for noncommercial purposes are licensees as a matter of law. *Id*. at 595, 604. The primary consideration when determining a visitor's status at the time of the injury is "the owner's reason for inviting persons onto the premises[.]" *Id*. at 604. If evidence is presented "from which invitee status might be inferred, it is a question for the jury." *Id*. at 595. But when a plaintiff fails to offer evidence that creates a factual dispute as to whether a church invited people onto its property for "an essential commercial purpose," see *id*. at 606, the plaintiff's status as a licensee should be decided by the court. *Sanders*, 303 Mich App at 5-6. The predominant or essential purpose for which the Church invited people onto its premises for Magdalen's Kitchen was to feed the less fortunate. No one bought any meals at that community event, so any income generated by that event should be considered insufficient to establish that the event had a commercial purpose. *Stitt*, 462 Mich at 604 ("the prospect of pecuniary gain is a sort of quid pro quo for the higher duty of care owed to invitees").

Here, the trial court reasoned that, "at the time she fell, [p]laintiff was on the [d]efendant's premises as a volunteer, and her activities were not commercial in nature, nor done for commercial purposes." Similarly, in *Kosmalski v St John's Lutheran Church*, 261 Mich App 56; 680 NW2d 50 (2004), this Court concluded that a volunteer injured while working at a church's vacation bible school "in the job of a playground helper" was not offering "child-care services for 'a material or commercial purpose' rather than one of 'a spiritual, religious or social nature.' " *Id*. at 57, 62-63. This Court reached that conclusion, and thereby treated the injured volunteer as a licensee, even though the volunteer was not a church member. *Id*. at 62. Accordingly, the trial court in this case ruled in a manner faithful to our precedent in concluding that plaintiff was a licensee—as opposed to an invitee—when she went to the Church to serve as a volunteer at Magdalen's Kitchen.

## B. PLAINTIFF'S CLAIM AS A LICENSEE

Our conclusion that plaintiff was a licensee, rather than an invitee, when she fell on ice and suffered injuries in the Church parking lot does not necessarily defeat her premises liability claim. Indeed, *Kosmalski* illustrates that a licensee injured on the premises of a church while performing volunteer activities may survive summary disposition when there are "hidden dangers the [church] knows or has reason to know of, if the hidden danger involves an unreasonable risk of harm and the licensee does not know or have reason to know of the hidden danger and the risk involved." *Id*. at 65. In those circumstances, the church owes the licensee "a duty to warn the licensee of any hidden dangers[.]" *Id*. To be sure, the duty to warn is limited to hazards the church actually knows exist, so the church owes no duty to warn of hazards just because further inspection might have revealed the hazards. *Shaw v Wiegartz*, 1 Mich App 271, 277; 135 NW2d 565 (1965). Also, if the licensee knows or has reason to know of a hazard and the risk involved, the church has no duty to warn the licensee of the hazard. *Blackwell v Franchi*, 502 Mich 918, 919; 914 NW2d 900 (2018). In sum, Michigan does not impose "a duty owed by a landowner to his licensees to repair or to inspect his property." *Burnett*, 247 Mich App at 372. "Rather, the landowner simply owes the licensee a duty to warn of unreasonably dangerous conditions, when the licensee neither knows nor has reason to know of the condition and risk involved." *Id*.

In granting the Church summary disposition under MCR 2.116(C)(10), the trial court relied on four conclusions on which no genuine issue of material fact exists. First, the record contains no evidence that the Church was aware of the icy condition of the parking lot. Second, plaintiff has lived in Michigan for decades and readily understood on the evening of her fall that there could be ice in the parking lot on a cold day in February. Third, plaintiff has not established that the ice on which she fell presented an unreasonable risk of harm. Fourth, because plaintiff was a licensee, the Church had no duty to inspect the parking lot, discover the ice, or either remove the ice or warn plaintiff of its existence. Placing these conclusions in the analysis of a premises liability claim of a licensee such as plaintiff, the trial court appropriately resolved defendant's summary disposition motion. Specifically, the Church owed no duty to warn plaintiff of the icy parking lot because the Church was unaware of that hazard, the Church had no duty to inspect the parking lot, and plaintiff had sufficient experience in Michigan to know, or have reason to know, of the risk of ice on a cold night in February. See *Stitt*, 462 Mich at 596. Beyond that, the icy parking lot did not constitute an "unreasonably dangerous condition." *Perkoviq v Delcor Homes–Lake Shore Pointe, Ltd*, 466 Mich 11, 19-20; 643 NW2d 212 (2002) ("The mere presence of ice, snow, or frost on a sloped rooftop [off which plaintiff fell] generally does not create an unreasonably dangerous condition."). Consequently, even though "a landowner owes a licensee a duty to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the hidden danger involves an unreasonable risk of harm and the licensee does not know or have reason to know of the hidden danger and the risk involved[,]" *Kosmalski*, 262 Mich App at 65, plaintiff cannot satisfy any—much less all—of those requirements. As a result, the trial court correctly awarded summary disposition to defendant under MCR 2.116(C)(10) on plaintiff's premises liability claim.

Affirmed.

/s/ Brock A. Swartzle
/s/ Christopher P. Yates